**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
LATASHA BANNISTER *individually and on behalf*
*of all others similarly situated*,

                                 Plaintiff,

               - against -

BERKMAN HENOCH PETERSON PEDDY &
FENCHEL, PC,

                              Defendant.
-------------------------------------------------------------X

                            **REPORT AND**
                          **RECOMMENDATION**

                     CV 20-1810 (MKB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    **PRELIMINARY STATEMENT**

      Plaintiff Latasha Bannister ("Plaintiff") commenced this action on behalf of herself and

all others similarly situated against the Defendant Berkman Henoch Peterson Peddy & Fenchel,

PC ("Defendant" or "Berkman Henoch") alleging violations of the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.  *See generally* Complaint ("Compl.") [DE 1].

Plaintiff's claims are based upon the contents of a letter delivered by Berkman Henoch to

Plaintiff in an attempt to collect a debt.  *See generally id*.  The parties participated in two

settlement conferences with the Court and were ultimately able to resolve the substantive legal

claims in this action.  *See* January 20, 2021 Civil Conference Minute Order ("1/20/21 CCMO")

[DE 21]; January 29, 2021 Sealed Civil Conference Minute Order ("1/29/21 CCMO") [DE 22].

As part of the settlement terms, the parties agreed that the attorney's fees would be submitted

separately to the Court for adjudication.  *See* 1/29/21 CCMO.

      Plaintiff's counsel, Craig Sanders, has now filed a motion for attorneys' fees and costs

seeking a total amount of $12,174.60.  *See generally* Memorandum of Law in Support of

Plaintiff's Motion to Fix the Amount of Attorneys' Fees and Costs ("Pl.'s Mem.") [DE 23-1];

Reply Memorandum in Further Support of Plaintiff's Motion for Attorneys' Fees ("Pl.'s Reply")

[DE 25].  Defendant opposes Plaintiff's application, arguing that hourly rates charged by

Plaintiff's attorneys should be reduced and that many of the time expenditures were excessive.

*See* Memorandum of Law in Opposition to Plaintiff's Motion Seeking to Fix the Amount of her

Attorneys' Fees and Costs ("Def.'s Opp'n") [DE 24-8].

Judge Brodie referred Plaintiff's motion to this Court for a Report and Recommendation

as to whether the motion should be granted.  *See* March 9, 2021 Electronic Order.  For the

reasons which follow, this Court respectfully recommends to Judge Brodie that Plaintiff's

motion for attorneys' fees and costs be GRANTED, in part, and DENIED, in part, to the extent

set forth in this Report and Recommendation.

## II.    BACKGROUND

Plaintiff commenced this putative FDCPA class action on April 15, 2020.  *See generally*

Compl.  Plaintiff's claims are primarily based upon a letter dated November 15, 2019 (the

"Letter") that she received from Defendant which attempted to collect a debt on behalf of a

creditor.  *See id.* ¶¶ 27-32; November 15, 2019 Letter from Berkman Henoch ("11/15/19 Letter")

[DE 1-1].  According to the Complaint, the Letter from Berkman Henoch referred to the creditor

as "the plaintiff," despite the fact that no lawsuit had been commenced against Plaintiff at the

time Berkman Henoch sent the Letter.  *See* Compl. ¶¶ 48-49.  Plaintiff claims that referring to

the creditor as "the plaintiff" is a false representation, misleading, and would cause the least

sophisticated consumers to believe they were sued, in violation of the FDCPA.  *See id.* ¶¶ 35-83.

Plaintiff also sought to certify a class of all consumers to whom Berkman Henoch sent similar

letters within the one-year period preceding the filing of this case.  *See id.* ¶ 85.  After receiving

an extension of time to do so, Berkman Henoch filed an Answer to the Complaint on July 16, 2020.  *See* Answer [DE 11]; June 18, 2020 Electronic Order.

At the Initial Conference held on August 7, 2020, the Court implemented a discovery schedule.  *See* August 7, 2020 Civil Conference Minute Order ("8/7/2020 CCMO") [DE 18]; Initial Case Management and Scheduling Order ("CMSO") [DE 19].  At that Conference, Defendants' counsel advised that approximately 18 letters are at issue in this case, all of which were sent to individuals in New York.  *See* 8/7/2020 CCMO at ¶ 7.  The Court noted that the parties would explore the prospect of settling this matter "in the short term in light of the damages figure which makes prolonged litigation not an optimum outcome here."  *Id.*

On October 16, 2020, Berkman Henoch filed a letter requesting a settlement conference prior to conducting full discovery.  *See* DE 15.  The Court deferred ruling on Berkman Henoch's request pending a response from Plaintiff as to whether Plaintiff also wished to participate in a settlement conference.  *See* October 17, 2020 Electronic Order.  More than 45 days passed without any response from Plaintiff's counsel.  In an electronic order, the Court directed Plaintiff's counsel to respond by December 9, 2020 or further action would be taken by the Court.  *See* December 3, 2020 Electronic Order.  On December 9, 2020, Plaintiff confirmed that the request to proceed with a settlement conference was mutual.  *See* DE 17.

The parties participated in a Settlement Conference with the Court on January 20, 2021 and a second session on January 29, 2021.  *See* 1/20/21 CCMO.  At the continued conference, the parties were able to resolve this action.  *See* 1/29/2021 CCMO.  The terms of the parties' agreement were included in the January 29 CCMO which was filed under seal.  *See id.*  As part of the agreement, the issue of Plaintiff's attorney's fees was to be submitted to the Court for determination.  *Id.*  The instant fee application followed.

3

### III.    <u>DISCUSSION</u>

Under the FDCPA, "any debt collector who fails to comply with any provision of this subchapter with respect to any person *is liable* to such person in an amount equal to the sum of ... (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a *reasonable* attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3) (emphasis added).  Based on the plain language of the statute, a debt collector who violates the FDCPA "is liable" for reasonable attorney's fees and costs to a successful plaintiff, which suggests that courts do not have discretion to determine whether attorney's fees should be awarded in the first instance where a plaintiff has prevailed.  *See id.*  Consequently, the Second Circuit has generally viewed the attorney's fees provision of the FDCPA as mandatory, awarding costs and reasonable attorney's fees as "a matter of course" to prevailing plaintiffs.  *See Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 95 n. 8 (2d Cir. 2008) (noting that "[t]he award of costs and fees to a successful plaintiff appears to be mandatory"); *Nicaisse v. Mel S. Harris & Assocs., LLC,* No. 14-CV-1569, 2015 WL 5561296, at *2 (E.D.N.Y. Sept. 19, 2015) ("Because the statute requires the award of costs and a reasonable attorney's fee, the Plaintiff's motion is granted.  The only question before the Court is whether the amounts sought by the Plaintiff are reasonable.") (internal quotation and citation omitted).

Here, the parties do not dispute Plaintiff's entitlement to attorneys' fees and costs because this award is a component of the parties' settlement agreement.  *See* Def.'s Opp'n at 2-3.  The only question before the Court is whether the amounts sought by Plaintiff are reasonable.

A.    **Attorneys' Fees and Costs**

1.    *The Lodestar Analysis*

The Court has discretion to determine the amount of attorneys' fees appropriate to satisfy

a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In adjudicating a motion for

attorneys' fees, both the Second Circuit and the Supreme Court have held that "the lodestar —

the product of a reasonable hourly rate and the reasonable number of hours required by the case

— creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166

(2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,

522 F.3d 182, 183 (2d Cir. 2007)). The Court should determine the "presumptively reasonable

fee" by looking to "what a reasonable paying client would be willing to pay." *Arbor Hill*, 522

F.3d at 183-84.

a.    **Reasonable Hourly Rate**

In determining reasonable hourly rates, the Court considers this Circuit's adherence to the

"forum rule," which states that a district court should generally use the prevailing hourly rates in

the district where it sits. *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir.

2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v.

HDMJ Restaurant, Inc.*, No. 09 Civ. 240, 2013 WL 4811225, at *19 (E.D.N.Y. Sept. 9, 2013)

(internal citations omitted); *Pinzon v. Paul Lent Mechanical Sys.*, No. 11 Civ. 3384, 2012 WL

4174725, at *5 (Aug. 21, 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

"Prevailing rates for experienced attorneys in the Eastern District of New York range from

approximately $300 to $400 per hour." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312,

2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018), *aff'd*, 790 Fed. App'x 289 (2d Cir. 2019); *see*

*Isakova v. Klein, Daday, Aretos & O'Donoghue LLC*, 19-CV-5221, 2021 WL 2382465, at *3

5

(E.D.N.Y. June 10, 2021); *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); *OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015), *adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

"Some judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Safeco Ins. Co. of Am.*, 2018 WL 2766139, at *7 (internal quotation marks omitted) (quoting *Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)); *Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on the Piers, LLC*, No. 18-CV-3642, 2019 WL 440641, at *5 (E.D.N.Y. Jan. 14, 2019) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners . . . ."), *report and recommendation adopted sub nom. Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on Piers, LLC*, No. 18-CV-3642, 2019 WL 438476 (E.D.N.Y. Feb. 4, 2019); *Eichenblatt v. Kugel*, No. 17 CV 559, 2018 WL 3202079, at *10 (E.D.N.Y. May 15, 2018) ("Prevailing hourly rates for attorneys in the Eastern District of New York typically range "from $300 to $450 for partners [and] $200 to $300 for senior associates."); *see Nicaisse v. Stephens & Michaels Associates, Inc.*, No. CV 14-1570, 2016 WL 4367222, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016).

Although the Second Circuit has not recently revisited the issue of what constitutes a reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 Fed. App'x 418, 422-23 (2d Cir. 2011) (summary order), which affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour, a number of district courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees. *See Morales v. B&M Gen. Renovation Inc.*, No. 14 CV 7290, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400"), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3 (same); *Valdez*, 2016 WL 3079028, at *8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15 5429, 2016 WL 7167955, at *9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. CV 15-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (same); *Gesualdi v. Paladin Constr. Corp.*, No. CV 14-7291, 2016 WL 943589, at *11 (E.D.N.Y. Feb. 18, 2016), *report and recommendation adopted*, 2016 WL 953261 (E.D.N.Y. Mar. 11, 2016) (same).

With the forum rule as a guide, courts also "take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended." *Pinzon*, 2012 WL 4174725, at *5; *United States v. City of New York*, No. 07-CV-2067, 2013 WL 5542459, at *6 (E.D.N.Y. Aug. 30, 2013) ("In addition to the prevailing market rates, the court must also consider case-specific factors."). These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing

> scorched earth tactics), the timing demands of the case, whether an
> attorney might have an interest (independent of that of his client) in
> achieving the ends of the litigation or might initiate the
> representation himself, whether an attorney might have initially
> acted *pro bono* (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other returns (such
> as reputation, etc.) that an attorney might expect from the
> representation.

*Arbor Hill*, 522 F.3d at 184; *see Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017). Additionally, courts should consider:

> (1) [T]he time and labor required; (2) the novelty and difficulty of
> the questions; (3) the level of skill required to perform the legal
> service properly; (4) the preclusion of employment by the attorney
> due to acceptance of the case; (5) the attorney's customary hourly
> rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the
> amount involved in the case and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.[1]

---

[1]      These are the 12 factors initially set out by the Fifth Circuit in *Johnson v. Georgia Highway Express. Inc*., 488 F.2d 714 (5th Cir. 1974). While the Second Circuit in *Arbor Hill* stated that "in determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors," 522 F.3d at 190, "[t]he Supreme Court recently approved the lodestar approach over the more discretionary approach that had been adopted by the 5th Circuit in [*Johnson*]." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 506 (S.D.N.Y. 2012) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). Yet the 12 *Johnson* factors appear to remain part of a comprehensive approach to determining the rate a reasonable client would be willing to pay. *See, e.g.*, *New York City Dist. Council of Carpenters*, No. 16-CV-3429, 2018 WL 3768586, at *2 (E.D.N.Y. July 23, 2018), *report and recommendation adopted sub nom. Trustees of New York City Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, No. 16-CV-3429, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); *Gutierrez v. Taxi Club Management, Inc.*, 17 Civ. 532, 2018 WL 3432786, at *13 (E.D.N.Y. June 25, 2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt., Inc*., No. 17-CV-0532, 2018 WL 3429903 (E.D.N.Y. July 16, 2018); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-CV-7311, 2016 WL 5812105, at *5 (S.D.N.Y. Sept. 22,

*Gomez v. Midwood Lumber & Millwork, Inc.*, No. 17-CV-3064, 2018 WL 3019877, at *4

(E.D.N.Y. June 17, 2018) (citing *Bogosian v. All Am. Concessions,* No. 06-CV 1633, 2012 WL

1821406, at *2 (E.D.N.Y. May 18, 2012)); *Arbor Hill*, 522 F.3d at 190. "The party seeking

reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours

spent and rates charged." *Isakova*, 2021 WL 2382465, at *2; *Finkel v. Omega Comm'n Svcs.,*

*Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983); *see Trustees of the Building Trades Educ.*

*Benefit Fund v. Culver Elec., LLC*, 17-CV-03448, 2021 WL 1911122 at *4 (E.D.N.Y. Apr. 19,

2021), *report and recommendation adopted*, 2021 WL 1906486 (E.D.N.Y. May 12, 2021);

*Isakova*, 2021 WL 2382465, at *2.

### b.    Reasonableness of Hours Billed

To determine whether the number of hours spent by counsel on a given task was

reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the

practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Isakova*,

2021 WL 2382465, at *3; *Parsons v. Bong Mines Enter. LLC*, CV 19-0813, 2021 WL 931506, at

*12 (E.D.N.Y. Feb. 18, 2021), *report and recommendation adopted*, 2021 WL 930259

(E.D.N.Y. Mar. 11, 2021); *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at

*2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A

court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the

litigation." *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007)

---

2016); *Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *13 (E.D.N.Y. Oct. 1,
2012), *report and recommendation adopted*, No. 11-CV-4232, 2012 WL 6561270 (E.D.N.Y.
Dec. 17, 2012).

(quoting *Hensley*, 461 U.S. at 434); *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015).

Likewise, where counsel relies on vague or excessive entries or block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted. *Anderson v. Cty. of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *see Barbu*, 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing); *Caban v. Employee Sec. Fund of the Elec. Products Indus. Pension Plan*, No. 10–CV–389, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (imposing a 33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks); *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 112 (E.D.N.Y. 2013) (imposing a 40% reduction due to vague and unrelated entries); *see also Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (reducing attorneys' fees award by 40% and holding that "[i]n the instance where a court has directed parties to parse out records to clearly state how much time the attorneys spent on each claim, and the parties have done so insufficiently and have referred to an unrealistic volume of hours as 'inextricably intertwined' with many claims, the court may also decrease the requested award amount"); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague descriptions of some of the work performed and the necessity of the work).

Further, where counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-skilled practitioner, "[u]niform

10

percentage cutbacks are warranted." *De La Paz v. Rubin & Rothman,* LLC, No. 11 Civ. 9625, 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013); *see Chavez*, 2016 WL 1171586, at *5 (reducing total hours by 30% since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate" and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel"); *Barshay v. Specified Credit Assocs. I, Inc.,* No. CV 15-1044, 2016 WL 3578993, at *3 (E.D.N.Y. June 3, 2016) (reducing total hours claimed in FDCPA action by 20% in light of the duplicative nature of the work, the fact that many of the tasks could have been accomplished by "a less experienced associate," and based upon the overall lack of care taken in preparation of materials submitted to the court), *report and recommendation adopted sub nom. Barshay v. Specified Credit Assocs. 1, Inc.,* No. 15-CV-1044, 2016 WL 3582058 (E.D.N.Y. June 28, 2016).

### 2.     *Costs*

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). However, it is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid. *See Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is . . . the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . .  A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation.");

11

*Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (internal quotation omitted). In addition, Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *Id.* (quoting *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012), *report & recommendation adopted sub nom.*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012)).

Generally, the only exception to this rule is where reimbursement is sought for a filing fee. In such cases, a court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket. *See Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014), *judgment entered sub nom.*, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) ("The Court takes judicial notice of the $350 filing fee reflected on the docket."); *Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket are sufficiently substantiated").

## B.    Application to the Facts

### 1.    *Hourly Rates of Plaintiff's Counsel*

Plaintiff requests hourly rates of $370 for Attorneys Craig Sanders and David Barshay. *See* Pl.'s Mem. at 6. Both attorneys are the founding partners of Barshay Sanders, PLLC, counsel of record for Plaintiff Bannister. *See* Declaration of Craig Sanders in Support of Motion to Fix Amount of Plaintiff's Attorney Fees ("Sanders Decl.") [DE 23-2] at ¶¶ 2-4. They have been practicing law for over twenty years and focus their federal civil litigation practice on consumer protection claims. *See id.* This Court has previously found a $370 hourly rate for

Attorneys Sanders and Barshay to be reasonable and reaches the same conclusion here.
*See Datiz v. Int'l Recovery Assocs., Inc.*, No. CV 15-3549, 2020 WL 5899881, at *8 (E.D.N.Y.
Mar. 12, 2020) ("Based on similar FDCPA cases in this district that have awarded Attorneys
Sanders and Barshay attorneys' fees, the Court finds that a reasonable hourly rate for Attorneys
Sanders and Barshay is $370."), *report and recommendation adopted as modified*, 2020 WL
3790348 (E.D.N.Y. July 7, 2020); *see also McMillan v. Tate & Kirlin Assocs., Inc.*, No. 20-CV-
777, 2020 WL 7632092, at *4 (E.D.N.Y. Dec. 1, 2020) (recommending $370 hourly rate for
attorneys Sanders and Barshay), *report and recommendation adopted*, 2020 WL 7625369
(E.D.N.Y. Dec. 22, 2020); *Razilova v. Halstead Fin. Servs. LLC,* No. 18-CV-1668, 2019 WL
1370695, at *7 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted,* No. 18-CV-1668,
2019 WL 1364399 (E.D.N.Y. Mar. 26, 2019) (reducing Attorneys Sanders and Barshay's rates
from $500 per hour to $350 for work done in FDCPA case); *Seeger v. Ross & Assocs.,* No. 18-
CV-03969, 2019 WL 5695944, at *5 (E.D.N.Y. Aug. 6, 2019) (reducing Attorney Sanders and
Barshay's hourly rates from $450 per hour to $350 per hour for work done in FDCPA case);
*Chavez v. MCS Claim Servs., Inc*, No. 15-CV-3160, 2016 WL 1171586, at *4 (E.D.N.Y.
Mar. 23, 2016) (reducing Attorneys Sanders and Barshay's rates from $575 per hour to $350 for
work done on a motion for default judgment) (collecting cases).

Plaintiff then requests an hourly rate of $300 for Attorney Johnathan Cader, a senior
associate at the firm. *See* Pl.'s Mem. at 6; Declaration of Jonathan Cader ("Cader Decl.")
[DE 23-5] at 1. Attorney Cader graduated from St. John's University School of Law in 2001 and
was admitted to practice law in the state of New York in 2007. *See* Cader Decl. at 1. Although
Attorney Cader had been practicing law for more than a decade at the time relevant to the instant

motion, he only recently focused his practice on consumer protection claims.  *See* Cader Decl. at 2.

On July 7, 2020, Judge Hurley adopted this Court's recommendation of a $240 hourly rate for Attorney Cader.  *See Datiz*, 2020 WL 3790348, at *4-5.  In *Datiz*, Attorney Cader's requested hourly rate was reduced from $350 to $240 based upon his level of experience with consumer law.  *See id.* at *5.  In Plaintiff's memorandum of law here, no explanation was provided as to why the Court should find reasonable a rate for Attorney Cader which is a $60 per hour increase from what was approved only last year. The Court finds a reduction of Attorney Cader's hourly rate to $250 to be reasonable.

Next, Plaintiff seeks an hourly rate of $200 for Nicole Rallis, a junior associate.  *See* Pl.'s Mem. at 6.  Attorney Rallis is a second-year associate who graduated from Fordham University School of Law in 2019.  *See* Sanders Decl. at 3.  Neither the Sanders Declaration nor the Cader Declaration indicates when Attorney Rallis was admitted to practice.  At the time relevant to the instant motion, based upon her year of graduation and presumed admission to the bar, it appears that Attorney Rallis had been practicing law for one year (first time entry is 9/23/20).  Thus, based on her level of experience, the Court finds that a reasonable hourly rate for Attorney Rallis is $160.  *See Datiz*, 2020 WL 3790348, at *4-5 (awarding associate with less than one year of experience an hourly rate of $150); *McMahon-Pitts v. Sokoloff,* No. 15-CV-4975, 2017 WL 1011473, at *3 (E.D.N.Y. Mar. 15, 2017) (finding reasonable an hourly rate of $170 per hour for junior associate with two years' experience in consumer law and $200 per for junior associate with three years' experience in consumer law).

Lastly, Plaintiff requests a $90 hourly rate for Angeliza Franco, a paralegal.  *See* Pl.'s Mem. at 6.  Neither the Sanders Declaration nor the Cader Declaration set forth any of Ms.

Franco's credentials.  However, the Defendant indicated in its opposition to the instant motion that it does not object to the $90 hourly rate for paralegal work.  *See* Def.'s Opp'n at 4 n.4.  This $90 rate falls within the range which courts in this District have found to be reasonable for paralegals.  Therefore, the Court will adopt the $90 hourly rate.  *See Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429, 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016) ("As to paralegals, courts in the Eastern District of New York have held that a range of $70 to $100 per hour is a reasonable fee in matters such as this."), *report and recommendation adopted sub nom.*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016).

### 2.    Hours Billed by Plaintiff's Counsel

Although the Barshay Sanders firm states that it expended 46.8 hours litigating this case, Plaintiff is not requesting reimbursement for 6.4 hours of this work.  *See* Pl.'s Mem. at 8.  According to Attorney Sanders, he "removed 6.4 hours of the 42.2 hours of total time billed which represents 15.2% of the total time expended."  Sanders Decl., ¶ 7.  These 6.4 hours consisted of "time entries that may be duplicative (or deemed excessive) and [ I ] subtracted these amounts or events.  I have deleted a number of entries (colored in red) reflecting time that was spent reviewing the same email or documents by multiple attorneys in the firm and/or would have not normally be [*sic*] charged by the firm to a client."  *Id*.  There is no debate that Attorney Sanders exercised "billing judgment" in parsing the firm's billing records.  Having reviewed those contemporaneous billing records in detail, the Court finds that Attorney Sanders' action in this regard was appropriate.

Therefore, Barshay Sanders seeks reimbursement for 40.4 hours of work by its attorneys and support staff.[2]  Included within this total 40.4 hours is the 4.6 hours that Plaintiff's counsel spent working on the reply for the instant motion.  *See* Pl.'s Reply at 8-9.  Although Plaintiff's counsel indicated in the reply brief that Attorney Cader expended 4.0 hours preparing the reply and Attorney Sanders spent 0.6 hours reviewing it, Plaintiff's counsel did not submit contemporaneous billing records – nor even an affidavit -- for either attorney for these hours.  In light of Plaintiff's failure to submit contemporaneous billing records to substantiate the 4.6 hours expended on the reply brief, the Court unfortunately cannot credit these hours for reimbursement.  *See Gesualdi v. Gen. Concrete, Inc.*, No. 11-CV-1866, 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances.").  The Court will therefore only examine the reasonableness of the 35.8 hours of attorney time for which Plaintiff seeks compensation as set forth in the billing records at DE 23-3.

In coming to a decision regarding the number of hours expended by Plaintiff's counsel and the reasonableness of the fee application, the Court takes several factors into account.  First, as both parties acknowledge, this was a simple and straightforward FDCPA case at the outset, which did not present novel issues nor require extensive discovery.  It should have remained so.  The facts of this case were not even at issue.  The Defendant law firm sent out 18 letters, all of which were sent to New York residents.   The letter sent to the named Plaintiff involved a mortgage debt presumably relating to her residence.  The letter was sent on the defendant law

---

[2]    The Court points out that Plaintiff's counsel did not provide any breakdown by the specific attorney/paralegal as to the actual hours contained for each one in the billing records, but rather left that work to the Court.  Nor did counsel multiply the requested hours by the requested rate to provide the Court with the sum total for each attorney/paralegal, but also left that task to the Court.

firm's letterhead and refers to the creditor as "the plaintiff." This information was known as early as the Initial Conference with the Court held in August 2020. At that time, the Court specifically discussed with counsel the fact that settlement should be explored in the short term because Plaintiff was seeking only statutory damages which are limited to $1,000 under 15 U.S.C. § 1692k(a)(2)(A) -- "which makes prolonged litigation not an optimum outcome here." DE 18 at 2.

Defendant's counsel argues that the Plaintiff's failure to promptly respond to Defendant's request for a settlement conference, even after two additional emails to Plaintiff's counsel on this topic, resulted in unnecessary billing for discovery in between which should never have proceeded. Def.'s Opp'n at 6. Defendant's counsel points out that when Plaintiff finally provided its demand for $7,500, the demand "failed to distinguish between the amount of statutory damages Plaintiff was seeking . . . and the attorney's fees incurred through this point in the litigation." *Id.* Defendant's counsel argues that Plaintiff's goal was to extend the litigation and effectively increase its fees. *Id.* As a result, Defendant served Plaintiff with a Rule 68 Offer of Judgment. *Id.*; Macy Decl., Ex. G. Meanwhile, Plaintiff's counsel took the position that because discovery demands had been served, it had no alternative but to timely respond. The Court finds that both sides bear some degree of responsibility here because they certainly could have reached out to the Court to seek a stay or an extension of time to serve and/or respond to discovery in order to explore settlement in the limited context of this case – particularly in light of the Court's urging immediate settlement discussions at the Initial Conference. Neither side did so. *See Samms v. Abrams*, 198 F. Supp. 2d 311, 322 (S.D.N.Y. 2016) (reducing 37.7 hours on discovery in FDCPA case to 20 hours because the facts were not in dispute and plaintiff's counsel had extensive experience litigating FDCPA claims).

Second, the Court turns to the specific time entries in Barshay Sanders' contemporaneous billing records for the attorneys who worked on this case and makes the following observations:

▪ **David Barshay**:  Although 1.9 hours are billed overall, the Court finds that the time billed on 7/27/2020 (.4) is duplicative of work performed by Attorney Cader (*see* charge for reviewing email with request for Rule 26(f) conference and with counter proposed case management plan which was "forwarded to JC [Cader] to handle 26(f)."  Likewise, the entry for 11/9/2020 (.2) simply states "follow-up with Nicole re: demands."  The entry is vague and there is no corresponding time entry for that date by junior associate Nicole Rallis.  Attorney Barshay's October 20, 2020 entry states "Continued email discussion re: settlement."  The person or persons with whom he was purportedly having this discussion is not identified (nor is there any indication if it was his colleagues or opposing counsel) and there is no prior entry referencing any settlement discussion.

▪ **Craig Sanders**:  Partner Sanders' hours are 19.1 of the total 35.8 hours here.  The billing records show that there are a number of entries where the task at hand could have and should have been performed by a less experienced attorney or a paralegal (or should not have been billed at all) but were nonetheless billed at the $370 partner rate.  Examples are found on 1/14/21 (.4 billed for ECF cisco webex instructions for settlement conference.  Forwarded to client. Call with client to discuss logistics); 2/16/21 (1.8 billed for "revised existing memorandum of law by Westlaw researching all citations to confirm they were still current/valid; revised procedural history section"); 2/16/21 (.3 billed for "Prepared notice of motion; proposed judgment" (half page boilerplate language).  The Court also finds excessive the billing of 3.5 hours for the draft statement of Plaintiff's settlement position, consisting of two pages, when the statutory damages here are capped at $1,000.  The Court will not parse every billing entry of attorney Sanders.  Rather, the Court is addressing these issues in the form of an across-the-board reduction which is set forth below.

▪ **Nicole Rallis**:  The 10/15/20 entry (.3) shows billing by a junior associate for work which should have been performed by a paralegal ("Obtained verification from client.  Served verification to defendant's demands.").  *See Microsoft Corp. v. Computer Care Ctr., Inc.,* No. 06-CV-1429, 2008 WL 4179653 at *15–16 (E.D.N.Y. Sept. 10, 2008) (reducing total hours expended because of basic or intermediate tasks which could have been undertaken by a paralegal at a significantly reduced hourly rate).  One entry by Attorney Rallis highlights the problem with the manner in which Barshay Sanders has handled the number of hours and type of billing it submits for Court review when seeking attorney's fees.  Here, the Court finds significant Rallis' 9/24/20 entry which states "[c]ontinued to work on discovery responses; *compared responses with templates for other cases*" (emphasis supplied).  It is clear that this attorney was researching other boilerplate fee submissions of Barshay Sanders in preparing this one.  And this is not the first time a court has brought this factor to the attention of the law firm.  *See Chavez v. MCS Claim Services, Inc.*, 15-CV-3160, 2016 WL 1171586, at *5 (E.D.N.Y. March 23, 2016) (reducing total  hours expended by Attorneys Sanders and Barshay by 30% since

"much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate" and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel"); *Seeger v. Ross & Assocs.,* No. 18-CV-03969, 2019 WL 5695944, at *6 (E.D.N.Y. Aug. 6, 2019) (reducing total hours expended by Attorneys Sanders and Barshay by 20% because the work conducted was duplicative of the work conducted in other similar FDCPA cases handled by the same counsel); *Datiz*, 2020 WL 3790348, at *11. Again, the Court has addressed these issues in the form of an across-the-board reduction which is set forth below.

▪ **Paralegal**: Overall, the Court finds that the time billed by the paralegal was reasonable, with one exception. On 6/17/20, there are two separate entries, each one referencing a "review" of the Notice of Appearance by two attorneys representing the Defendants whom the paralegal "added to system." Each of these entries is billed at .3, for a total of .6 hours when such task would realistically appear to take about .1 hour combined. The Court also notes that the Defendant has not objected to the paralegal hourly rate.

With regard to Attorney Cader, the Court finds the hours expended reasonable, especially since Plaintiff's counsel and the Court have eliminated the overlap from other attorneys' entries. The following Chart reflects the Court's findings with respect to the hours at issue for each attorney in this fee application:

| Attorney | Requested Rate | Hours Requested | Requested Fees | Recomm Rate | Recomm Hours | Fee Award |
|---|---|---|---|---|---|---|
| Barshay | $370 | 1.9 | $ 703 | $370 | 1.3 | $ 481.00 |
| Sanders | $370 | 19.1 | $ 7,067 | $370 | 19.1 | $ 7,067.00 |
| Cader | $300 | 3.1 | $ 930 | $250 | 3.1 | $ 775.00 |
| Rallis | $200 | 10.3 | $ 2,060 | $160 | 10.3 | $ 1,648.00 |
| Paralegal | $ 90 | 3.3 | $ 297 | $ 90 | 3.3 | $ 297.00 |
| TOTAL: | | 37.7 | $11,057 | | 37.1 | $10,268.00 |

Having carefully considered the fee application,[3] Defendant's objection and the foregoing observations, however, the Court finds that a further across-the-board reduction is appropriate here. Among other things, Defendant's counsel points out that it served only six interrogatories on Plaintiff's counsel, resulting in "less than two (2) full pages." Def.'s Opp'n at 9; Macy Decl., Ex. B. Further, Defendant served a limited number of document requests for production of three categories of documents. The response from Plaintiff consisted of a single document. Def.'s Opp'n at 8-9; Macy Decl., Ex. C. Yet the Barshay Sanders firm billed 8.5 hours for these responses between September 10, 2020 and October 7, 2020, attributed to Attorney Sanders and Attorney Rallis. On January 20, 22 and 29, 2021, Attorney Sanders billed another 3.1 hours to reading Defendant's responses to Plaintiff's six interrogatories and the 137 pages of paper production – just two weeks prior to the day he started drafting the fee application to this Court. *See* Sanders Decl., Ex. 1. The Court finds the time spent on these items excessive. For this reason, as well as the issues raised above in the discussion of the attorneys' time entries, the Court finds that a 15% across-the-board reduction of the fee award is warranted. *Datiz*, 2020 WL 5899881, at *11; *Seeger*, 2019 WL 5695944, at *6 (The Court's observations regarding the papers herein and the care (or lack thereof) taken in their preparation, leads it to recommend reducing the number of hours claimed by 20 percent.); *Chavez*, 2016 WL 1171586, at *5 (finding that where some of the work "appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel," the court reduced the number of hours claimed by 30 percent). Taking the $10,268.00 calculation made by the Court -- and deducting

---

[3]    For the reasons stated previously, the hours Plaintiff's counsel (Attorneys Sanders and Cader) expended for the Reply brief are not included here.

15% across-the-board from that number -- yields a final figure of $8,727.80.  This Court

therefore recommends to Judge Brodie that the Plaintiff be awarded $8,727.80 in attorney's fees.

### 3.    Costs

Plaintiff seeks to recover $475.60 in costs as follows:  (1) $400.00 for the filing fee; and

(2) $75.60 for service of process.  *See* Pl.'s Mem. at 8; Sanders Decl. ¶ 3.  The Court takes

judicial notice, as it is permitted to do, of Plaintiff's payment of the $400 filing fee as reflected

on the docket and likewise finds that cost to be substantiated.  Plaintiff's memorandum of law

indicates that an invoice from its process server, Elite Legal Services of NY, Inc., was provided

to the Court.  *See* Pl.'s Mem. at 8.  However, the invoice itself lists the process server's name as

"Lightning Legal Services LLC."  *See* Invoice for Service of Process [DE 23-4].

Notwithstanding the discrepancy, the amount requested by Plaintiff in the motion matches the

amount billed to Barshay Sanders in the invoice from Lightning Legal Services LLC.  *See* Pl.'s

Mem. at 8; Invoice for Service of Process.  As such, the Court finds the Plaintiff's requested

costs to be substantiated and recommends that Plaintiff be awarded costs in the amount of

$475.60.

In light of the foregoing information, this Court respectfully recommends to Judge Brodie

that Plaintiff be awarded fees in the sum of $8,727.80 and costs in the sum of $475.60, for a total

award of $9,203.40.

### IV.    CONCLUSION

For the reasons stated in this Report and Recommendation, the Court respectfully

recommends to Judge Brodie that Plaintiff's motion for attorneys' fees and costs be GRANTED,

in part, and that Plaintiff be awarded (1) $8,727.80 in attorneys' fees and (2) $475.60 in costs, for

a total of $9,203.40.

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Margo K. Brodie.  Any requests for an extension of time for filing objections must be directed to Judge Brodie prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
      July 25, 2021

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge